UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL G. TACKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:08-cv-1035-WTL-TAB |
| ) | |
| MICHAEL ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Michael G. Tackett requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying Tackett's application for Supplemental Security Income ("SSI"). The Court rules as follows.

## APPLICABLE STANDARD

To be eligible for SSI, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler,* 766 F.2d 284, 285 (7th Cir. 1985). In determining whether a claimant is disabled, an ALJ applies the five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. Is the claimant engaging in substantial gainful activity? If so, he is not disabled.

>   2. If not, does the claimant have an impairment or combination of impairments that are severe? If not, he is not disabled.
>
>   3. If so, does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant is disabled.
>
>   4. If not, can the claimant do his past relevant work? If so, he is not disabled.
>
>   5. If not, can the claimant perform other work given his residual functional capacity ("RFC"), age, education, and experience? If so, then he is not disabled. If not, he is disabled.

The burden of proof is on the claimant for the first four steps and then shifts to the Commissioner at the fifth step. *See Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See, e.g.*, *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000). This Court will sustain the ALJ's findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Scheck v. Barnhart,* 357 F.3d 697, 699 (7th Cir. 2004). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *See id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. In other words, the ALJ must clearly articulate his analysis of the evidence, building an accurate and logical bridge from the evidence to his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

## BACKGROUND

Tackett was born on December 9, 1976, and has a GED. He applied for SSI on October 29, 2003. In his application for benefits, Tackett alleged that he was disabled due to epilepsy, perennial rhinitis, cardiac dysrhythmia, and peptic ulcer. His application was denied initially and upon reconsideration, after which he requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Tackett was represented by counsel at the hearing, which was held on November 21, 2006. Tackett and a vocational expert testified at the hearing. Thereafter, on March 21, 2007, the ALJ rendered his decision in which he concluded that Tackett was not disabled under the terms of the Social Security Act ("the Act"). The Appeals Council denied Tackett's request for review of the ALJ's decision on June 2, 2008. Tackett then filed this action for judicial review.

*Hearing Testimony*

At his hearing, Tackett testified that he has never been employed and does not have a driver's license. He testified that despite taking anti-seizure medication he has one or two "mild seizures" per week. Sometimes these mild seizures consist of "just staring"; other times his hand

will twitch and his shoulder will jerk.  He also suffers from more severe seizures once or twice a month.  He described these seizures as follows: "I feel dizziness . . . and I about lose consciousness" and afterwards "I have to sit down for a few minutes because I won't know where I am.  It takes me a minute or so to gather myself."  *Id.* at 265, 273.  The seizures come on without warning and are more likely to occur in stressful situations.

Tackett also suffers from a heart problem for which he takes Verapamil.  He testified that in stressful situations he experiences a rapid heartbeat.  He also testified that he has a stomach ulcer for which he takes Nexium and sinus and allergy problems for which he takes Flonase and Benadryl.

After Tackett concluded his testimony, vocational expert Stephanie Archer testified.  The ALJ asked Archer to consider a hypothetical individual with Tackett's's age, education, and work experience who could lift and carry ten pounds occasionally and five pounds frequently, was able to stand and walk for about two hours and sit for about six hours in an eight-hour day,  was limited to minimal bending, squatting, or climbing, was prohibited from working around any dangerous moving machinery, flames, bodies of water, or heights, who could not operate a motor vehicle, and who was limited to simple and repetitive work with no more than superficial interaction with the general public, co-workers or supervisors.  Archer testified that such an individual could perform a full range of unskilled, sedentary work, including assemblers, hand packer inspectors, general office clerks, and machine tenders.  The ALJ then asked Archer to include in the hypothetical question that the person must work in an environment that is relatively free of toxic fumes, gases and respiratory irritants and also should avoid extreme temperatures or humidity; she testified that those additional restrictions would not change her answer.  In response to questioning by Tackett's counsel, Archer testified that a person with the additional

restriction of either having to work at his own pace or having no contact at all with co-workers and the public and only superficial contact with supervisors would be precluded from all work.

*Medical Evidence*

The medical evidence of record confirms that Tackett suffers from and takes medication for a seizure disorder and supraventricular tachycardia. In addition, Tackett has been treated for allergies, stomach ulcer, gastroesophageal reflux disease (GERD), hypertension, and sinus problems.

In January 2004, Dr. Eric Levine performed a Social Security disability examination of Tackett. Tackett reported having difficulty with activities such as walking half a mile, doing heavy housework, fixing meals, grocery shopping, taking medications, paying bills and driving. Upon Dr. Levine's physical examination, he found that his physical movements were well developed and no fundoscopic abnormalities were noted. Moreover, Dr. Levine indicated that Tackett's nose, ears, mouth were normal and he did not have difficulty understanding speech. Tackett's lungs were also normal. Mild tenderness in the epigastric area was noted. Dr. Levine concluded that Tackett could stand and walk for at least two hours in an eight hour day, and lift and carry less than ten pounds frequently and over ten pounds occasionally.

In late January 2004, Dr. Sands, a state agency physician, reviewed Tackett's medical records and concluded that he did not have any exertional limitations. However, he did find some postural limitations, in that Tackett was limited to occasionally climbing ramps and stairs and precluded entirely from climbing ladders, ropes, and scaffolds. He also found that Tackett should avoid all exposure to hazards such as machinery or heights.

On February 14, 2004, Tackett underwent a psychological evaluation at the request of the state agency. The evaluation was completed by Herbert Henry, Ph.D., and consisted of a mental

status evaluation and administration of the Wechsler Adult Intelligence Scale III. Tackett indicated that he is able to get himself dressed each day and takes care of his personal hygiene. Tackett stated that he could perform simple house chores such as cleaning, washing dishes, and taking out the trash. Finally, Tackett reported that he has no friends and that he reads and plays guitar for pleasure. Based on his observations, Dr. Henry determined that Tackett's full scale IQ was 93, which was in the low average range. Dr. Henry also noted that Tackett had put forth a good effort for the evaluation.

On February 26, 2004, state agency consultant K. Neville, Ph.D., opined that Tackett did not have any medically determinable mental impairment. W. Shipley, Ph.D., concurred with this conclusion on June 4, 2004.

## DISCUSSION

Applying the sequential evaluation process, at step one the ALJ found that Tackett had not engaged in substantial employment. At steps two and three, the ALJ concluded that Tackett had the severe impairments of seizure disorder and supraventricular tachycardia but that neither met or medically equaled a listed impairment. At step four, the ALJ concluded that Tackett retained the RFC to perform simple, repetitive work at the sedentary exertional level with the following restrictions:

> He can climb stairs and ramps on an occasional basis, but cannot climb ladders, ropes or scaffolds. He can balance, stoop, kneel, crouch, and crawl on an occasional basis. Mr. Tackett should not work in proximity to unprotected heights or around dangerous moving machinery. Mr. Tackett cannot perform work requiring more than superficial interaction with the general public, co-workers or supervisors.

Record at 17. In addition, he could lift and carry up to 10 pounds occasionally and five pounds frequently, and he could sit for six hours in an eight-hour work day and stand and/or walk for two

hours. Finally, at step five, the ALJ found that given Tackett's RFC, age, education, and experience, he was capable of performing a significant number of jobs in the national economy and therefore was not disabled.

Tackett objects to the ALJ's decision in three respects. Each of his arguments is addressed, in turn, below.

### *Failure to Use Medical Expert*

Tackett argues that the ALJ erred in not utilizing a medical expert to aid him in evaluating the medical evidence of record to determine whether Tackett's seizures satisfy the relevant Listings. Specifically, Tackett argues that the ALJ improperly determined without consulting a medical expert that Tackett's seizures were properly evaluated under Listing 11.03, which applies to nonconvulsive seizures, rather than Listing 11.02, which applies to convulsive seizures. However, Tackett does not point to anything on the record that remotely suggests that he suffers from convulsive seizures. Tackett was given ample opportunity at the hearing to describe his seizures, and he unambiguously described nonconvulsive seizures. The medical records are consistent with Tackett's testimony. Tackett has not demonstrated that there was any need for a medical expert in this case; nor has he demonstrated that the ALJ's findings with regard to his seizures were not supported by substantial evidence; indeed, he has not pointed to any evidence that contradicts those findings. The ALJ's decision not to utilize a medical expert was not error.

### *Failure to Describe Available Jobs*

Tackett next objects to the fact that the ALJ's decision fails to cite examples of the jobs Tackett can do given his RFC and the number of those jobs that exist in Indiana. Tackett correctly cites SSR 96-9p for the proposition that "Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that

the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." The ALJ found in this case that Tackett's limitations "have little or no effect on the occupational base of unskilled sedentary work." Record at 20. This finding is supported by the testimony of the vocational expert at the hearing. *Id.* at 292 ("That individual would be able to perform a full range of unskilled, sedentary work."). The vocational expert then testified regarding several types of unskilled, sedentary jobs and the number of those jobs existing in Indiana. While it certainly would have been preferable for the ALJ to include this information in his decision, his failure to do so does not merit remand. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Tackett also argues, citing SSR 00-4, that the ALJ failed to fulfill his "affirmative responsibility to ask about any possible conflict between the VE evidence and information provided in the D.O.T." However, the ALJ's questioning of the vocational expert at the hearing was prefaced by the following: "in considering your response please consider whether your testimony or your opinion may conflict with the DOT or the SOC and to the extent that there is any conflict please explain the conflict and how you resolve it." Record at 292. Thus, as a technical matter, the ALJ did, in fact, fulfill his responsibility under SSR 00-4. While merely reciting those words, without more, might not be sufficient to overcome a substantive challenge by a claimant who identifies a conflict between the D.O.T. and the ALJ's finding, Tackett has not identified–or even attempted to identify–such a conflict. SSR 00-4 provides no reason for remand in this case.

*Failure to Consider Tackett's Headaches*

Tackett's final argument is that the ALJ erred by not properly crediting his complaints of headaches. While Tackett points to several pages of medical records which indicate that he suffers from headaches, and while it is certainly possible for a person's headaches to be severe enough to be disabling, there is absolutely no evidence of record which would support a finding that Tackett's headaches are disabling. Counsel did not mention headaches in his opening statement during the hearing and did not elicit any testimony regarding the nature or intensity of his headaches or any treatment Tackett may have received for them. In fact, the only mention of headaches at the hearing was Tackett's testimony that he had "a little bit of a headache right now," which he attributed to sinus issues likely triggered by dust from the carpet in the hearing room. Record at 283. "[A] claimant represented by counsel is presumed to have made his best case before the ALJ," *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007), and in this case Tackett's counsel did nothing to put the ALJ on notice that Tackett's headaches were an issue. As noted, he also has not directed this Court to anything in the record that suggests that a finding of disability could be based on his headaches. Accordingly, the ALJ's failure to address Tackett's headaches was not error.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's denial of Tackett's application for SSI is **AFFIRMED**. 08/28/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification